UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EBONY SON ENTERTAINMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> PRISCILLA RENEA HAMILTON p/k/a MUNI LONG; SUPER GIANT RECORDS, LLC; MUNI LONG, INC.; MUNI WORLD, INC.; and WHITE ROSE GARDEN, LLC, <br><br> Defendants. | Case No. 1:25-cv-08802-ALC <br><br><br> **ANSWER TO COMPLAINT, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT** |
| PRISCILLA RENEA HAMILTON p/k/a MUNI LONG, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> CHAKA ZULU and JEFF DIXON, <br><br> Third-Party Defendants. | |

Defendants Priscilla Renea Hamilton ("Hamilton"), Super Giant Records, LLC ("Super Giant"), Muni Long, Inc. ("MLI"), Muni World, Inc. ("MWI"), and White Rose Garden, LLC ("White Rose," and collectively, "Defendants"), by their attorneys, Reitler Kailas & Rosenblatt LLP, and for their Answer to the Complaint filed on October 23, 2025 (the "Complaint"), by plaintiff Ebony Son Entertainment, Inc. ("Plaintiff" or "ESE"), and their Counterclaims and Third-Party Complaint, respond in the following numbered paragraphs, which correspond to the numbered paragraphs of the Complaint, as follows:

1

## ANSWER TO NATURE OF ACTION[1]

1. Defendants deny the allegations contained in paragraph 1, except admit that Hamilton is known professionally as Muni Long.

2. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2.

3. Defendants deny the allegations contained in paragraph 3.

4. Defendants deny the allegations contained in paragraph 4.

5. Defendants deny the allegations contained in paragraph 5 and specifically deny the existence of the Agreement as defined by Plaintiff.

6. Defendants deny the allegations contained in paragraph 6.

7. Defendants deny the allegations contained in paragraph 7, except admit that Hamilton terminated Plaintiff as her manager.

8. Defendants deny the allegations contained in paragraph 8.

9. Defendants deny the allegations contained in paragraph 9.

10. Defendants deny the allegations contained in paragraph 10.

## ANSWER TO PARTIES

11. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11.

12. Defendants admit the allegations contained in paragraph 12.

---

[1] To the extent any of the headings in the Complaint contain or purport to contain allegations in support of Plaintiff's claims, Defendants deny the same.

13. Defendants admit the allegations contained in paragraph 13, except to the extent it states legal conclusions that do not require a response, and to the extent a response is required, Defendants deny the allegations.

14. Defendants deny the allegations contained in paragraph 14.

15. Defendants deny the allegations contained in paragraph 15.

16. Defendants admit the allegations contained in paragraph 16, except to the extent it states legal conclusions that do not require a response, and to the extent a response is required, Defendants deny the allegations.

17. Defendants deny the allegations contained in paragraph 17.

18. Defendants deny the allegations contained in paragraph 18.

19. Defendants deny the allegations contained in paragraph 19.

## ANSWER TO JURISDICTION AND VENUE

20. Paragraph 20 states legal conclusions that do not require a response, and to the extent a response is required, Defendants deny the allegations.

21. Paragraph 21 states legal conclusions that do not require a response, and to the extent a response is required, Defendants deny the allegations.

22. Paragraphs 22 states legal conclusions that do not require a response, and to the extent a response is required, Defendants deny the allegations.

## ANSWER TO FACTS

23. Defendants deny the allegations contained in paragraph 23.

24. Defendants admit the allegations contained in paragraph 24.

25. Defendants deny the allegations contained in paragraph 25, except deny knowledge or information sufficient to form a belief as to the truth of the allegations concerning Plaintiff's knowledge.

26. Defendants deny the allegations contained in paragraph 26.

27. Defendants deny the allegations contained in paragraph 27.

28. Defendants deny the allegations contained in paragraph 28, except admit that the album Revenge was released on or about August 30, 20204 and that Hamilton received a Grammy for the song "Made For Me."

29. Defendants deny the allegations contained in paragraph 29.

30. Defendants deny the allegations contained in paragraph 30, except admit that unbeknownst to Hamilton, Plaintiff was being paid commission by Hamilton's former business manager who worked for Plaintiff, all without Hamilton's knowledge or consent.

31. Defendants deny the allegations contained in paragraph 31.

32. Defendants deny the allegations contained in paragraph 32.

33. Defendants deny the allegations contained in paragraph 33, except admit that Hamilton terminated Plaintiff's services and did not make any payments to Plaintiff after October 2024.

34. Defendants deny the allegations contained in paragraph 34.

35. Defendants deny the allegations contained in paragraph 35.

36. Defendants deny the allegations contained in paragraph 36, except admit that Hamilton informed Plaintiff that as part of any agreement she would only agree to pay Plaintiff a percentage of the net proceeds of work that ESE brought to Hamilton (as opposed to work that Hamilton sourced on her own).

37. Defendants deny the allegations contained in paragraph 37.

38. Defendants deny the allegations contained in paragraph 38.

39. Defendants deny the allegations contained in paragraph 39, except admit that unbeknownst to Hamilton, Plaintiff was being paid commission by Hamilton's former business manager who worked for Plaintiff, all without Hamilton's knowledge or consent.

40. Defendants deny the allegations contained in paragraph 40.

41. Defendants deny the allegations contained in paragraph 41.

42. Defendants deny the allegations contained in paragraph 42.

43. Defendants deny the allegations contained in paragraph 43.

44. Defendants deny the allegations contained in paragraph 44.

45. Defendants deny the allegations contained in paragraph 45.

46. Defendants deny the allegations contained in paragraph 46.

## ANSWER TO COUNT I – BREACH OF ORAL CONTRACT

47. Defendants repeat and re-allege each and every response in paragraphs 1-46 above, as if such response were set forth in full herein.

48. Defendants deny the allegations contained in paragraph 48.

49. Defendants deny the allegations contained in paragraph 49.

50. Defendants deny the allegations contained in paragraph 50.

51. Defendants deny the allegations contained in paragraph 51.

52. Defendants deny the allegations contained in paragraph 52.

53. Defendants deny the allegations contained in paragraph 53.

**WHEREFORE**, Plaintiff is not entitled to relief under Count I.

## ANSWER TO COUNT II – BREACH OF IMPLIED IN FACT CONTRACT

54. Defendants repeat and re-allege each and every response in paragraphs 1-53 above, as if such response were set forth in full herein.

55. Defendants deny the allegations contained in paragraph 55.

56. Defendants deny the allegations contained in paragraph 56.

57. Defendants deny the allegations contained in paragraph 57.

58. Defendants deny the allegations contained in paragraph 58.

59. Defendants deny the allegations contained in paragraph 59.

60. Defendants deny the allegations contained in paragraph 60.

**WHEREFORE**, Plaintiff is not entitled to relief under Count II.

### ANSWER TO COUNT III – UNJUST ENRICHMENT
(In the Alternative to Counts I and II)

61. Defendants repeat and re-allege each and every response in paragraphs 1-60 above, as if such response were set forth in full herein.

62. Defendants deny the allegations contained in paragraph 62.

63. Defendants deny the allegations contained in paragraph 63.

64. Defendants deny the allegations contained in paragraph 64.

65. Defendants deny the allegations contained in paragraph 65.

66. Defendants deny the allegations contained in paragraph 66.

67. Defendants deny the allegations contained in paragraph 67.

**WHEREFORE**, Plaintiff is not entitled to relief under Count III.

### ANSWER TO COUNT IV – DECLARATORY JUDGMENT

68. Defendants repeat and re-allege each and every response in paragraphs 1-67 above, as if such response were set forth in full herein.

69. Defendants admit the allegations contained in paragraph 69.

70. Defendants deny the allegations contained in paragraph 70.

71. Defendants deny the allegations contained in paragraph 71.

72. Defendants deny the allegations contained in paragraph 72, except admit that an actual dispute and controversy exists between the parties.

73. Defendants deny the allegations contained in paragraph 73.

74. Defendants deny the allegations contained in paragraph 74.

**WHEREFORE**, Plaintiff is not entitled to relief under Count IV.

## ANSWER TO COUNT V – EQUITABLE ACCOUNTING

75. Defendants repeat and re-allege each and every response in paragraphs 1-74 above, as if such response were set forth in full herein.

76. Defendants deny the allegations contained in paragraph 76.

77. Defendants deny the allegations contained in paragraph 77.

78. Defendants deny the allegations contained in paragraph 78.

79. Defendants deny the allegations contained in paragraph 79.

80. Defendants deny the allegations contained in paragraph 80.

**WHEREFORE**, Plaintiff is not entitled to relief under Count V.

## ANSWER TO JURY DEMAND

The statement does not contain any allegations and therefore no response is required. Defendant demands a jury trial on all triable issues.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of estoppel.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the unclean hands doctrine.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the statute of frauds.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the alleged Agreement is indefinite.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent it failed to mitigate its damages.

### SEVENTH AFFIRMATIVE DEFENSE

Defendants' actions were not the proximate cause or cause in fact of any injury to or alleged by Plaintiff and any injuries it sustained were the result of its own conduct or the intervening or superseding conduct of third parties.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part, because upon information and belief Plaintiff and its principals are not a licensed booking agent.

### COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

Defendant/Counterclaimant Hamilton, as and for her Counterclaims and Third-Party Complaint against Plaintiff, Chaka Zulu ("Zulu"), and Jeff Dixon ("Dixon"), alleges as follows:

### PARTIES

81. Defendant is a resident of the State of Florida.

82. Plaintiff is a corporation organized and existing under the laws of the State of Georgia and located at 3645 Marketplace Blvd, Suite 130-292, East Point, GA, 30344. The

registered agent for Plaintiff is Nicole Keel ("Keel").  Plaintiff is owned by and acts through its principals Zulu and Dixon.

83. Zulu is a resident of the State of Georgia.

84. Dixon is a resident of the State of Georgia.

## JURISDICTION AND VENUE

85. This Court has subject matter jurisdiction over the counterclaims under 28 U.S.C. § 1332 because Defendant is a citizen of Florida and Plaintiff is a citizen of Georgia and the matter in controversy exceeds the amount of $75,000.

86. This Court has supplemental jurisdiction over Defendant's counterclaims and third-party complaint pursuant to 28 U.S.C. § 1367(a) because the claims are related to the underlying case or controversy in dispute in the main action.

87. The venue of this action is properly laid in the Southern District of New York pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Defendant's claims occurred in this District and because Plaintiff and Zulu and Dixon are subject to the Court's personal jurisdiction in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

88. In early 2023, Keel, Hamilton's business manager at the time, recommended to Hamilton that she hire a personal manager and specifically recommended Plaintiff.  Keel did not inform Hamilton that she was working for Plaintiff and/or was acting as Zulu's business manager at the time.

89. Zulu and Hamilton met on or about July 2, 2023, to discuss the potential personal management services that Plaintiff claimed it could render.  Zulu did not inform Hamilton that Plaintiff was working with Keel.

90. Hamilton ultimately agreed that Zulu and Dixon, on behalf of Plaintiff, would provide Hamilton with a trial period of at will management services. However, there was never any signed agreement, and no material terms were ever finalized. Hamilton discussed paying Plaintiff 20% of the net revenue received by Hamilton solely with respect to opportunities that Plaintiff originated. All entertainment income streams created before Hamilton met Zulu were not commissionable by Plaintiff.

91. At no time did Plaintiff and Hamilton enter into a written management agreement.

92. Plaintiff served as Hamilton's manager at an at will basis.

93. Upon information and belief, neither Plaintiff, Zulu, nor Dixon are licensed booking agents.

94. Soon after Hamilton met Zulu, Hamilton realized that Plaintiff had never previously represented a successful female singer and did not have the necessary experience or resources outside of the connections already established by Hamilton.

95. Plaintiff failed to provide Hamilton adequate management services. Zulu and Dixon repeatedly offered Hamilton's services at club appearances despite low performance fees which would have only covered her expenses. In addition, the venues permitted smoking which was hazardous for Hamilton's respiratory system. Zulu or Dixon would confirm Hamilton's performance at these venues without Hamilton's consent and became agitated when Hamilton questioned whether the performances were advancing her career. If Hamilton wanted to cancel the appearance, Zulu and Dixon openly blamed Hamilton in order to damager her reputation in the industry.

96. As a result of Hamilton refusing to blindly follow Plaintiff's orders and demands, Zulu became vindictive toward Hamilton. However, Hamilton did not immediately fire Plaintiff

for fear that Zulu and Dixon would take affirmative steps to undermine her music career, which became reality.

97. In or about March 2024, while Hamilton's best-selling single "Made for Me" was gaining popularity, Hamilton experienced a flare up of her lupus condition, a chronic autoimmune disease.

98. Instead of being taken to a medical facility, Plaintiff, through Zulu and Dixon, were instrumental in causing Hamilton to be admitted to the Cleveland Clinic Indian River Behavioral Health Center, a mental rehabilitation institution. Upon information and belief, Zulu and Dixon conspired with or instructed Keel to cause Hamilton to be taken to such facility.

99. As Hamilton's manger, Zulu and Dixon, as principals of Plaintiff, understood that there was a correlation between Hamilton's stress levels and aggravating her lupus condition.

100. Hamilton spent five days in the facility before being transferred to Cleveland Medical Center to treat her condition. Before being transferred, Hamilton was prescribed Lithium which further aggravated her condition.

101. During that time, Hamilton was isolated and experienced excruciating pain and mental anguish from being forced to remain in a mental health facility instead of having her lupus condition treated.

102. As a result of being placed in the wrong facility, Hamilton did not receive correct medical care, which had a long-term negative effect on her health.

103. Neither Zulu nor Dixon visited or attempted to contact Hamilton while she was hospitalized.

104. While Hamilton was hospitalized, Dixon unilaterally and without consulting Hamilton attempted to have her appearance on Chris Brown's then-upcoming summer 2024 tour cancelled by calling Chris Brown's manager.

105. Upon information and belief, Zulu and Dixon also instructed Keel to get Hamilton execute a power of attorney, which Hamilton never requested or authorized.

106. When Hamilton was ultimately released from the hospital in March 2024, Zulu visited Hamilton at her mother's house and for the first time demanded payment of 20% of the gross revenue Hamilton received on all music related activities.

107. Hamilton, who was in a weakened state and still recovering from the agony caused by Zulu, Dixon, and Keel's misconduct, nonetheless rejected the demand.

108. Hamilton fired Keel in or about May 2024.

109. Prior to her firing, Keel was in control of Hamilton's finances and paid Plaintiff without Hamilton's knowledge. For example, while Hamilton was admitted to the hospital, Keel, unilaterally and without authorization, paid Plaintiff and paid herself an additional $20,000. Hamilton estimates that Keel, without authorization, paid Plaintiff approximately $50,000 from July 2023 to May 2024.

110. From late June through early August 2024, Hamilton performed on the Chris Brown tour. During the tour, Plaintiff participated in several video conferences where the touring revenues and financials were discussed. Unfortunately, the tour for Hamilton did not earn what was anticipated and at times was losing money. During this time, Zulu and Dixon never stated to Hamilton or her new business manager that Plaintiff's fee would be based on gross revenues.

111. Moreover, upon information and belief, Zulu and Dixon had access to the tour budgets, which showed management commissions as $0 because the tour was not generating income.

112. In July 2024, Hamilton confronted Zulu and Dixon about their role in having her committed to a mental health facility earlier in March.

113. Hamilton also expressed to Zulu and Dixon that they were not performing any meaningful work as her manager.

114. Plaintiff, Zulu, and Dixon continually failed to satisfy the rudimentary functions of a personal manager in the music industry. For example, Zulu and Dixon failed to follow up on potential important opportunities for Hamilton that would advance her career.

115. In early November 2024, Plaintiff became aware that Hamilton was going to be selected as a recipient of the 2025 Billboard Women in Music Rising Star Award, which also included an opportunity to create paid content for Honda. However, representatives of Plaintiff refused to respond to requests from Billboard to approve material deal terms that needed to be negotiated regarding commercial sponsorship. With the deadline fast approaching, Def Jam Recordings, Hamilton's record label, was ultimately able to get feedback from Hamilton directly, and the award and sponsorship were accepted by Hamilton without any involvement from Plaintiff.

116. Plaintiff's conduct almost caused Hamilton to miss her opportunity to be selected as a recipient of the Billboard award.

117. Plaintiff's principals also attempted to exploit Hamilton's talents for their own benefit. For example, Dixon repeatedly pressured Hamilton to allow Dixon's son to attend Hamilton's studio sessions and appear on her songs.

118. Dixon also repeatedly demanded Hamilton perform for free at a friend's club. When Hamilton refused, Dixon became enraged.

119. In or about November 2024, Hamilton received an offer to perform at the musical festival Coachella. Plaintiff recommended that Hamilton, to her own detriment, not participate in the festival. Plaintiff told Hamilton that because of the low performance fee paid by the festival Hamilton would have to come out of pocket for her own expenses. Plaintiff understood that its fee would be calculated based on Hamilton's net earnings.

120. Hamilton disagreed with Plaintiff because the marketing potential and brand awareness opportunities at Coachella outweighed the relatively low fee. Hamilton recognized that Plaintiff did not understand her market potential.

121. Hamilton fired Plaintiff in December 2024 after Zulu and Dixon attempted to take credit for a performance by Hamilton that was procured by Hamilton's publicist.

### CLAIM I
**(Breach of Fiduciary Duty)**

122. Hamilton repeats and realleges each and every allegation contained in paragraphs 1 through 121 hereof as if fully set forth herein.

123. As Hamilton's personal manager, Plaintiff, Zulu, and Dixon, at all times, owed Hamilton the fiduciary duties of good faith and loyalty.

124. As set forth above, Plaintiff, Zulu, and Dixon, breached their respective fiduciary duties to Hamilton to act in her best interests.

125. By reason of the foregoing, Hamilton has been damaged by the aforementioned breaches of the respective fiduciary duties of Plaintiff, Zulu, and Dixon, in an amount to be determined at trial.

## CLAIM II
### (Intentional Infliction of Emotional Distress)

126. Hamilton repeats and realleges each and every allegation contained in paragraphs 1 through 125 hereof as though fully set forth herein.

127. The aforementioned misconduct by Plaintiff, Zulu, and Dixon, including by harassing Hamilton and causing Hamilton to be admitted to a mental health facility to treat her lupus condition, was at all times extreme and outrageous and intended to harass Hamilton.

128. Plaintiff, Zulu, and Dixon knew of Hamilton's existing condition and that she was susceptible to emotional distress and acted with the requisite intent to cause such distress.

129. As a direct and proximate result of aforementioned misconduct by Plaintiff, Zulu, and Dixon, Hamilton has suffered and continues to suffer severe emotional distress, including severe pain and suffering and mental anguish.

130. Hamilton is entitled to an award of compensatory and punitive damages in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

131. Pursuant to Federal Rule of Civil Procedure 38, Hamilton respectfully demands trial by jury of all issues so triable.

**WHEREFORE**, Hamilton demands judgment as follows:

(a) Dismissing the Complaint in its entirety;

(b) Granting the Counterclaim and Third-Party Complaint in their entirety;

(c) On Claim I, an award of damages in an amount to be determined at trial;

(d) On Claim II, an award of damages, including punitive damages, in an amount to be determined at trial;

(e) An award of attorneys' fees and the costs that Hamilton has incurred in this

action; and

(f)     Granting such other relief as the Court deems just and proper.

Dated:  January 6, 2026

                                                       Respectfully submitted,

**REITLER KAILAS & ROSENBLATT LLP**

By: *s/ Brett Van Benthysen*
      Brian D. Caplan
      Brett Van Benthysen
      885 Third Avenue, 20th Floor
      New York, NY 10022
      Tel: (212) 209-3045
      bcaplan@reitlerlaw.com
      bvanbenthysen@reitlerlaw.com
*Attorneys for Defendants and Third-Party Plaintiff*