# EXHIBIT "B"

Formatted: Header

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EBONY SON ENTERTAINMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PRISCILLA RENEA HAMILTON p/k/a MUNI LONG; SUPER GIANT RECORDS, LLC; MUNI LONG, INC.; MUNI WORLD, INC.; and WHITE ROSE GARDEN, LLC,<br><br>Defendants. | Case No. 1:25-cv-08802-ALC<br><br>**COMPLAINT** |

Plaintiff, Ebony Son Entertainment, Inc. ("Ebony Son" or "Plaintiff"), by and through its attorneys, Fox Rothschild LLP, and pursuant to 28 U.S.C. §§ 1332, file this Complaint against Defendants, Priscilla Renea Hamilton (professionally known as "Muni Long"), Super Giant Records, LLC ("Super Giant"), Muni Long, Inc. ("Muni Long, Inc."), Muni World, Inc. ("Muni World, Inc."), and White Rose Garden, LLC ("White Rose") (collectively referred to herein as the "Defendants"), and allege as follows:

## NATURE OF ACTION

1. Defendant Priscilla Renea Hamilton is publicly known as the musical artist "Muni Long" but her less well-known performances are as a serial grifter. After taking the benefit of Plaintiff's elite and highly sought-after management services for more than a year, Muni Long shamelessly reneged on her promises to pay Plaintiff the agreed-upon, customary percentage of revenue she earned, and only earned because Plaintiff assisted in obtaining those engagements. This stunning display of ungratefulness and lack of integrity compels Plaintiff's pursuit of the claims in the Complaint to obtain that which rightfully belongs to Plaintiff.

2. Plaintiff Ebony Son is comprised of Chaka Zulu and Jeff Dixon who are titans in

Formatted: Footer

Formatted: Header

the music industry–launching their own record label in 1998 called "Disturbing Tha Peace

Formatted: DocID

Formatted: Header

Records". They gained an international stellar reputation for their expertise and fierce loyalty to their clients, working tirelessly for talent at every stage of their careers.

3. This matter arises from the Defendants' breach of the parties' oral (or alternatively, implied in fact) contract for commission-based services.

Formatted: Indent: First line: 0.5"

4. Specifically, Plaintiff was hired in or around July 2023 to manage Muni Long's music career, but Defendants have failed to pay Plaintiff certain commissions and expense reimbursements owed pursuant to the parties' agreement.

5. In or around July 2023, Defendants (*i.e.*, Muni Long and each of the currently known entities she owns, controls, and/or uses interchangeably as alter egos as part of a common business enterprise) entered into an agreement with Plaintiff – verbally and through subsequent conduct (the "Agreement") which had two components: First, Defendants agreed to pay Plaintiff the music industry standard 20% of all gross revenue that Defendants collected from any projects, ventures, sources, events and/or streams that Plaintiff obtained, secured, negotiated, participated in, were involved in, supported, provided counsel on, advised on, assisted in and/or guided in any way (collectively "Engagements"), irrespective of whether the Engagement was signed or whether the revenue for it was actually paid to or collected by Defendants before the Agreement terminated (the "Commission Payments"). And second, Defendants agreed to reimburse Plaintiff all management related expenses incurred in connection with the foregoing management activities (the "Expense Reimbursements").

6. For a little over a year, the parties performed under the Agreement, with Plaintiff providing managerial services to Defendants, and Defendants making the agreed-upon 20% Commission Payments and Expense Reimbursements to Plaintiff.

Formatted: Font: 9

Formatted: DocID, Line spacing: single

Formatted: Header

7. After October 2024, Defendants brazenly decided to renounce and unilaterally withdraw from their obligations to Plaintiff, bite the hand that feeds them, and refuse to make any payments owed to Plaintiff as required by the Agreement.

Formatted: Indent: First line: 0.5"

8. In approximately January 2025, Defendants formally terminated the Agreement.

9. Plaintiff is informed and believes, and based thereon alleges, that Defendants received (and continue to receive) revenue from Engagements from October 2024 to date, and have failed to pay Plaintiff the Commission Payments due pursuant to the Agreement, as well as required Expense Reimbursements.

Formatted: Indent: First line: 0.5"

10. Defendants' failure and refusal to pay Plaintiff the Commission Payments and Expense Reimbursements pursuant to the Agreement constitutes a material breach of contract, thus necessitating the filing of this action.

**PARTIES**

11. Plaintiff, Ebony Son, is a Georgia corporation with its principal place of business in East Point, Georgia. Ebony Son is thus a citizen of Georgia. Ebony Son is owned and operated by Ahmed T'chaka Zulu Obafemi a/k/a Chaka Zulu ("Chaka Zulu") and Jeff Dixon ("Jeff Dixon").

Formatted: Indent: First line: 0.5"

12. Defendant, Priscilla Renea Hamilton (professionally known as "Muni Long") is an individual residing in Vero Beach, Florida. Muni Long is thus a citizen of Florida.

13. Defendant, Super Giant, is an inactive Florida limited liability company with its principal place of business in Vero Beach, Florida. Upon information and belief, Super Giant's member(s) are Muni Long and her husband or ex-husband Raysean Hairston, both of whom reside in Florida. Super Giant is thus a citizen of Florida.

14. Defendant Muni Long, Inc. is a Florida corporation with its principal place of business in New York City, New York. Muni Long, Inc. is thus a citizen of both Florida and New York.

Formatted: Font: 9
Formatted: DocID, Line spacing: single

Formatted: Header

15. Defendant Muni World, Inc. is a Florida corporation with its principal place of business in New York City, New York. Muni World, Inc. is thus a citizen of both Florida and New York.

Formatted: Indent: First line: 0.5"

16. Defendant, White Rose, is an inactive Florida limited liability company with its principal place of business in Vero Beach, Florida. Upon information and belief, White Rose's member(s) are Muni Long and her husband or ex-husband Raysean Hairston, both of whom reside in Florida. White Rose is thus a citizen of Florida.

17. Defendants Muni Long, Inc., Muni World, Inc., Super Giant, and White Rose are collectively referred to herein as the "Entity Defendants."

18. In addition to the Entity Defendants being direct parties to the Agreement, Plaintiff is informed and believes, and based thereon alleges, that at all material times hereto, there has been a lack of corporate separateness between Defendant Muni Long, on the one hand, and the Entity Defendants, on the other hand, such that as a matter of equity and to avoid the perpetration of a fraud, the corporate forms of the Entity Defendants should be disregarded. The Entity Defendants are liable for the Commission Payments and Expense Reimbursements under the Agreement to the same extent as Defendant Muni Long.

19. Plaintiff is informed and believes, and based thereon alleges, that evidence of the alter ego status of the Entity Defendants includes, but is not limited to, the following: the Entity Defendants are and were inadequately capitalized for the business in which they were purportedly formed to engaged in, and fail to follow strict corporate formalities; the Entity Defendants share the same officer and equity holder (Defendant Muni Long); the Entity Defendants share operating space; the Entity Defendants were created and designed to shield assets and hide income from creditors of Muni Long; monies were improperly commingled between and among the Entity

Formatted: Font: 9

Formatted: DocID, Line spacing: single

Formatted: Header

Defendants and Defendant Muni Long; various Entity Defendants made commission payments to Plaintiff; and to the extent the Entity Defendants share employees and other resources, such as human resources, Plaintiff is informed and believes and alleges that this is not being accounted for, thus disregarding the corporate form and commingling assets. The obvious and reasonably foreseeable inequitable result in all of this is to deprive those to whom Muni Long has become personally, and legally obligated, of compensation.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the Plaintiff (a citizen of Georgia) and all Defendants (citizens of New York and/or Florida), and the amount in controversy in this action exceeds $75,000.00, exclusive of interest and costs.

Formatted: Indent: First line: 0.5"

21. This Court has personal jurisdiction over each Defendant, all of whom are either New York citizens and/or conduct substantial business in New York during the term of and in connection with performance of the Agreement.

22. Venue is proper in this Court pursuant to the provisions of 28 U.S.C. § 1391(b), because this District is where: (i) one or more of the New York Entity Defendants reside (New York, New York); and/or (ii) a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred.

## FACTS

23. In 2023, up and coming R&B star, Defendant Muni Long, sought to benefit from Plaintiff's reputation, hard work, and contacts. Defendant Muni Long sought Plaintiff out through a mutual connection and set up a meeting to discuss Plaintiff managing her career.

Formatted: Indent: First line: 0.5"

24. The first meeting among Jeff Dixon, Chaka Zulu, and Muni Long occurred on or about July 2, 2023, at the Essence Music Festival in New Orleans (the "Initial Meeting").

Formatted: Font: 9

Formatted: DocID, Line spacing: single

Formatted: Header

25. Immediately prior to the Initial Meeting, the mutual acquaintance making the introduction confirmed she had advised Muni Long that Plaintiff would only agree to serve as her personal manager if Defendants agreed to a music industry standard 20% commission structure.

Formatted: Indent: First line: 0.5"

26. Plaintiff confirmed with Defendants at the Initial Meeting that this commission structure was not negotiable.

27. Plaintiff and Defendants thereupon verbally agreed at the Initial Meeting, and before Plaintiff performed any services for Defendants, to the Agreement, to wit, that Defendants would pay the Commission Payments on all Engagements, and the Expense Reimbursements.

28. Within days of being hired pursuant to the Agreement, Plaintiff commenced working on the release of Muni Long's album, Revenge. Thanks to Plaintiff's efforts, Revenge was released on August 30, 2024, just days before the cutoff to be considered for the next Grammys. It was this album, Revenge, which earned Muni Long a Grammy for the focus track "Made For Me".

29. Plaintiff's requirement that it be paid pursuant to the Agreement, consistent with the industry standard 20% of gross revenue, was unwavering and unambiguous throughout the parties' relationship.

30. For over a year, Defendants performed pursuant to the Agreement, and by their conduct continually reaffirmed the existence of the Agreement between the parties. Specifically, from approximately July 2023 through October 2024, Defendants made the 20% Commission Payments to Plaintiff whenever Defendants received revenue for Engagements, although a formal accounting will confirm whether Defendants made all required Commission Payments during this period.

31. Defendants made their last 20% Commission Payment in October of 2024.

Formatted: Font: 9

Formatted: DocID, Line spacing: single

Formatted: Header

32. The parties' course of performance and dealing through October 2024 confirms Defendants' clear and continuing assent to the Agreement.

Formatted: Indent: First line: 0.5"

33. Defendants failed to make any payments to Plaintiff after October 2024 and unilaterally terminated the parties' relationship ("Termination") on or about January 6, 2025 ("Termination Date").

34. Defendants have, from October 2024 to the present, received revenue from Engagements that is subject to Commission Payments under the Agreement, as well as Expense Reimbursement.

35. Defendants have failed and refused to pay Plaintiff since approximately October 2024 on such Engagements, and failed to pay Expense Reimbursements, despite being contractually obligated to do so by the Agreement.

36. Defendants, during the term of the Agreement, purportedly became unhappy with the amount they were paying for Plaintiff's management services, and sought to revise the Agreement by expressing a preference to pay a percentage of net proceeds, instead of 20% of gross revenue. Plaintiff never agreed to revise the Agreement. Defendant's mere complaints about a contract term do not, of course, have any legal consequence, except that they constitute an admission by Defendants that they knew they were bound by the existing terms of the Agreement.

37. In or around July of 2024, the parties met in-person (the "Summer 2024 Meeting"), wherein Plaintiff advised Defendants that Plaintiff would not agree to any modification of the Agreement, and thereupon Plaintiff and Defendants expressly confirmed the existing terms of the Agreement would remain in place.

Formatted: Font: 9
Formatted: DocID, Line spacing: single

Formatted: Header

38. Defendants were aware at all material times, including but not limited to at the Summer 2024 Meeting, that absent Defendants' adherence to the terms of the Agreement, Plaintiff would resign immediately as Defendants' manager.

Formatted: Indent: First line: 0.5"

39. After the Summer 2024 Meeting, Defendants further affirmed and ratified the existence and binding nature of the Agreement by making Defendants' next Commission Payment in the correct amount of 20% of the gross revenue for a particular Engagement

40. Plaintiff, who worked tirelessly to advance Muni Long's career, have secured over $5 million in revenue for Defendants to date, but as to a significant percentage of this revenue, Defendants have failed to pay Plaintiff the corresponding Commission Payments as required by the Agreement.

41. Upon information and belief, the revenue Plaintiff helped generate for Defendants as to which Plaintiff has not received required Commission Payments, exceeds $2 million. This $2 million in revenue derives from, at least in significant part, numerous Engagements, including but not limited to: (a) an ASCAP publishing deal (valued at $1 million) for which Plaintiff provided management counsel, advice, and guidance, and as to which Defendants still owe Plaintiff 20%, or $200,000; (b) various recording and writing engagements during the last quarter of 2024 and into 2025 from which Defendants were to be paid $207,000; (c) various engagements between August 2024 through the end of that year, including at the Aretha Franklin theater (August 16, 2024 for $85,000), the So So Def Show (October 12, 2024 for $75,000), a performance for SiriusXM in Atlanta (October 17, 2024 for $70,000) and college performances in Hampton, Virginia, Daytona Beach, Florida and Jacksonville, Florida (October 23, 2024, and November 6, 2024, respectively, for $170,000 combined); (d) publishing deals; (e) songwriting agreements, including agreements

Formatted: Indent: First line: 0.5"

Formatted: Font: 9
Formatted: DocID, Line spacing: single

Formatted: Header

with Shenseea and Tiwa Savage; and (f) side artist features, including features with Teddy Swims and Toosi.

42. Prior to the Termination, Plaintiff also set the stage for a successful 2025, allowing Defendants to have already booked performing and recording Engagements that have or will gross well into six figures – Engagements that triggered (and continue to trigger) Commission Payments to Plaintiff notwithstanding Defendants' termination of the Agreement in January 2025.

Formatted: Indent: First line: 0.5"

43. As of the date of the Termination, the known unpaid Commission Payments owed to Plaintiff under the Agreement total at least $458,600.00.

44. As of the Termination, Plaintiff also incurred expenses totaling $153,698.50, for which it now seeks Expense Reimbursements.

45. The above-referenced amounts do not include: (a) Commission Payments owed to Plaintiff under the Agreement based on revenue Defendants received unexpectedly and/or unbeknownst to Plaintiff; or (b) post-Termination Commission Payment owed to Plaintiff related to Plaintiff's pre-Termination performance of services under the Agreement.

46. Plaintiff has performed all promises, obligations, conditions, and covenants under the Agreement and otherwise that may have been or be required to recover the amounts prayed for herein, except as may have been waived by Defendants or extinguished by their conduct.

47. Plaintiff initiated this action on October 23, 2025. ***The next day***, representatives of Defendant Long were quoted in a Billboard article having denied the Plaintiff's allegations in the Complaint, and claiming that "this situation has been particularly distressing, as it involves ***the same team that took possession of the artist's phone and sought to have her involuntarily committed to a mental health facility***[.]" *See* Billboard, *Muni Long's Ex-Managers Call Her A 'Serial Grifter' In Lawsuit Over Fees; Singer's Team Denies Claims* (Oct. 24, 2025). A true and correct copy of the October 24, 2025 Billboard article is attached hereto as Exhibit **A**.

Formatted: Font: 9
Formatted: DocID, Line spacing: single

Formatted: Header

48. The claim that Plaintiff had Defendant Long involuntarily committed to a mental health facility is a ***blatant lie*** designed to disparage Plaintiff's reputation in the music industry. Immediately after Defendant Long's representatives were quoted by Billboard, several other online publications regurgitated Long's false claims, including Complex, Sportskeeda, and Hot97. *See* Complex, *Muni Long Sued By Former Managers, Who Claim $600,000 in Unpaid Commissions* (Oct. 25, 2025); Sportskeeda, *"Same team that took possession of the artist's phone": Muni Long's representative blasts former managers for alleging $600,000 in unpaid commission* (Oct. 26, 2025); Hot97, *Muni Long Faces $600K Lawsuit Over 'Unpaid Commissions' Former Managers Claim* (Oct. 26, 2025). True and correct copies of the Complex, Sportskeeda, and Hot97 articles are attached hereto as Exhibits **B**, **C**, and **D**, respectively.

49. On January 6, 2026, Defendants filed their Answer with Counterclaims and Third Party Complaint (the "Answer") (ECF No. 18). In the Answer, Defendants alleged:

> In or about March 2024, while Hamilton's best-selling single "Made for Me" was gaining popularity, Hamilton experienced a flare up of her lupus condition, a chronic autoimmune disease. Instead of being taken to a medical facility, Plaintiff, through Zulu and Dixon, were instrumental in causing Hamilton to be admitted to the Cleveland Clinic Indian River Behavioral Health Center, a mental rehabilitation institution. Upon information and belief, Zulu and Dixon conspired with or instructed Keel to cause Hamilton to be taken to such facility. As Hamilton's manger, Zulu and Dixon, as principals of Plaintiff, understood that there was a correlation between Hamilton's stress levels and aggravating her lupus condition. Hamilton spent five days in the facility before being transferred to Cleveland Medical Center to treat her condition. Before being transferred, Hamilton was prescribed Lithium which further aggravated her condition. During that time, Hamilton was isolated and experienced excruciating pain and mental anguish from being forced to remain in a mental health facility instead of having her lupus condition treated. As a result of being placed in the wrong facility, Hamilton did not receive correct medical care, which had a long-term negative effect on her health.

Answer at ¶¶ 97-102.

50. The allegations against Zulu and Dixon are specifically asserted against them in their capacity as Defendant Long's managers.

Formatted: Font: 9

Formatted: DocID, Line spacing: single

Formatted: Header

51. Online publications continued to pedal Defendant Long's outlandishly false allegations once they were formally asserted in the Answer, including Billboard, Yahoo Entertainment, iHeart Radio. *See* Billboard, *Muni Long Countersues Ex-Managers for Forcing Her Into Mental Health Facility* (Jan. 7, 2026); Yahoo Entertainment, *Muni Long Alleges She Was 'Forced To Remain In A Mental Health Facility' In Countersuit Against Ex-Managers* (Jan. 8, 2026); iHeart, *Muni Long Alleges Ex-Managers Forced Her Into Mental Health Facility* (Jan. 8, 2026). True and correct copies of the Billboard, Yahoo Entertainment, and iHeart articles are attached hereto as Exhibits **E**, **F**, and **G**, respectively.

52. Defendant Long's allegations regarding her commitment to a mental health facility as set forth in the Answer and repeated in various media outlets have irreversibly entered the public domain false claims designed to disparage Zulu and Dixon's reputations in the music industry – and have done just that, both personally and professionally.

**COUNT I – BREACH OF ORAL CONTRACT**

~~47.~~53. Plaintiff repeats, realleges, and incorporates all of the previous allegations contained in the foregoing paragraphs as if fully set forth herein.

Formatted: Indent: Left: 0", First line: 0.5", Right: 0.25", Space Before: 0 pt

~~48.~~54. Plaintiff and Defendants are parties to the Agreement.

55. The Agreement is a valid and enforceable agreement.

~~49.~~56. Plaintiff performed the duties and/or obligations conferred upon it in or by the Agreement, or any such performance was excused.

Formatted: Indent: Left: 0", First line: 0.5", Right: 0.25"

Formatted: Font: 9

Formatted: DocID, Line spacing: single

Formatted: Header

~~50.~~57. Defendants materially breached the Agreement by failing to make Commission Payments and Expense Reimbursements to Plaintiff in connection with revenue, income, or other compensation Defendants received from Engagements.

Formatted: Indent: First line: 0.5", Space Before: 0 pt

~~51.~~58. Upon information and belief, Defendants have failed to pay, ***at minimum***, a total of $612,298.50 in Commission Payments and Reimbursement Expenses owed to Plaintiff under the Agreement, and this amount is subject to a full audit accounting~~, and does not include, for example, what Plaintiff is owed from the 2024 Chris Brown tour for which Defendants grossed north of $1.2 million.~~.[1]

Formatted: Indent: First line: 0.5"

~~52.~~59. Given that Defendants have concealed commissionable revenue received both before and after Termination, the amount of Commission Payments and Expense Reimbursements owed to Plaintiff will undoubtedly grow such that a prejudgment receiver, special master, and/or formal accounting is required to ascertain the total amount and nature of Plaintiff's damages.

~~53.~~60. As a result of Defendants' numerous breaches of the Agreement – *i.e.*, Defendants' failure to make Commission Payments and Reimbursement Expenses to Plaintiff under the Agreement – Plaintiff has been damaged in an amount to be proven at trial, but such amount is at least known to far exceed the jurisdictional minimum of this Court.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount equal to the unpaid Commission Payments and Reimbursement Expenses owed to Plaintiff, the exact amount to be proven at trial, plus costs of this action, prejudgment interest, and for such other and further relief as this Court deems just and proper.

**COUNT II – BREACH OF IMPLIED IN FACT CONTRACT**
(In the Alternative to Count I)

~~54.~~61. Plaintiff repeats, realleges, and incorporates all of the previous allegations

Formatted: Indent: First line: 0.5"

[1] This amount does not include, for example, what Plaintiff is owed from the 2024 Chris Brown tour for which Defendants grossed north of $1.2 million.

Formatted: Font: 9

Formatted: DocID, Line spacing: single

Formatted: Header

contained in the foregoing paragraphs as if fully set forth herein.

Formatted: Font: 9

Formatted: DocID, Line spacing: single

Formatted: Header

55.62. To the extent the Court and/or trier of fact finds there was no express oral agreement between the parties, then it is evident the parties' manifested an agreement through their conduct.

Formatted: Indent: First line: 0.5"

56.63. Specifically, for over a year, Plaintiff provided Defendants with various and extensive management services, and in exchange, Defendants made Commission Payments and Reimbursement Expenses to Plaintiff consisting of: (a) payments in the form of 20% of all gross revenue that Defendants collected from any projects, ventures, sources, events and/or streams that Plaintiff obtained, secured, negotiated, participated in, were involved in, supported, provided counsel on, advised on, assisted in and/or guided in any way; and (b) reimbursement of Plaintiff's related expenses.

57.64. Defendants materially breached the aforementioned implied contract by failing, consistent with their prior conduct, to make Expense Reimbursements and Commission Payments to Plaintiff in connection with revenue/income Defendants received from projects, ventures, sources, events and/or streams that Plaintiff obtained, secured, negotiated, participated in, were involved in, supported, provided counsel on, advised on, assisted in and/or guided in some way.

58.65. Upon information and belief, Defendants have failed to pay Plaintiff at least a total of $612,298.50 in Commission Payments and Reimbursement Expenses owed to Plaintiff—an amount that does not include for example, what Plaintiff is owed from the 2024 Chris Brown tour in which Defendants grossed north of $1.2 million..[2]

59.66. Given that Defendants have concealed other commissionable revenue received both before and after Termination, the total amount of Commission Payments and Reimbursement Expenses owed to Plaintiff will undoubtedly grow and will require prejudgment remedies, such as a receiver, special master, and/or a formal accounting, to fully determine Plaintiff's damages.

[2] This amount does not include, for example, what Plaintiff is owed from the 2024 Chris Brown tour for which Defendants grossed north of $1.2 million.

Formatted: Font: 9

Formatted: DocID, Line spacing: single

~~60.~~67. As a direct and proximate result of Defendants' numerous breaches of the parties' implied contract – *i.e.*, Defendants' failure to make Commission Payments and Reimbursement Expenses to Plaintiff – Plaintiff has been damaged in an amount to be proven at trial, but an amount that far exceeds the jurisdictional minimum of this Court.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount equal to the unpaid Commission Payments and Reimbursement Expenses owed to Plaintiff (the exact amount to be proven at trial), plus costs of this action, prejudgment interest, and for such other and further relief as this Court deems just and proper.

## COUNT III – UNJUST ENRICHMENT
(In the Alternative to Counts I and II)

~~61.~~68. Plaintiff repeats, realleges, and incorporates all of the previous allegations contained in the foregoing paragraphs as if fully set forth herein.

~~62.~~69. To the extent the Court and/or trier of fact finds there was no express or implied agreement between the parties, then it is still clear Defendants were unjustly enriched at the expense of Plaintiff.

~~63.~~70. Plaintiff conferred benefits on Defendants by providing management services to Defendants, including but not limited to: (a) paying for Defendants' expenses; and (b) securing, negotiating, obtaining and/or assisting with various deals, engagements, performances, events, appearances, agreements, songs and albums that earned Defendants a significant amount of revenue and/or financial compensation.

~~64.~~71. Defendants had knowledge of the benefits conferred upon them, as Plaintiff actively provided the management services.

~~65.~~72. Defendants voluntarily accepted and retained the benefits conferred upon them.



Formatted: Header

Formatted: Indent: First line: 0.5"

Formatted: Indent: First line: 0.5"

Formatted: Font: 9

Formatted: DocID, Line spacing: single

Formatted: Header

~~66.~~73. Under the circumstances set forth herein (*i.e.*, Plaintiff providing management services to and creating revenue streams for Defendants for which Defendants failed to compensate and reimburse Plaintiff), it would be inequitable for Defendants to retain the benefits conferred upon them without paying Plaintiff for such benefits and services.

Formatted: Indent: First line: 0.5"

~~67.~~74. Given the industry standard commission for a music manager – particularly of Plaintiff's stature – is 20%, it would be equitable for Defendants to: (a) reimburse Plaintiff for all expenses incurred relating to managing Defendants; and (b) pay Plaintiff any unpaid commissions at a rate of 20% of all gross revenue that Defendants collected and/or obtained from any projects, ventures, sources, events and/or streams that Plaintiff secured, negotiated, obtained participated in, were involved in, supported, provided counsel on, advised on, assisted in and/or guided in any way.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount equal to the value of Defendants' unjust enrichment (as set forth above, with the exact amount to be proven at trial), plus costs of this action, prejudgment interest, and for such other and further relief as this Court deems just and proper.

## COUNT IV – DECLARATORY JUDGMENT

~~68.~~75. Plaintiff repeats, realleges, and incorporates all of the previous allegations contained in the foregoing paragraphs as if fully set forth herein.

Formatted: Indent: First line: 0.5"

~~69.~~76. This is a claim for declaratory relief pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202.

~~70.~~77. As detailed herein, there is a substantial, present and real controversy between the Plaintiff and Defendants, having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Formatted: Indent: First line: 0.5"

Formatted: Font: 9

Formatted: DocID, Line spacing: single

Formatted: Header

~~71.~~78. The present controversy concerns the rights of the respective parties regarding entitlement to, and amount of compensation owed to Plaintiff for certain management services that Plaintiff provided to Defendants.

Formatted: Indent: First line: 0.5"

~~72.~~79. Specifically, the actual dispute and controversy that currently exists between the parties includes the following:

a. Whether the parties came to an agreement regarding compensation for Plaintiff providing management services to Defendants;

b. Whether Defendants agreed to pay Plaintiff 20% of all gross revenue that Defendants collected from any projects, ventures, sources, events and/or streams that Plaintiff obtained, secured, negotiated, participated in, were involved in, supported, provided counsel on, advised on, assisted in and/or guided in any way, irrespective of whether the revenue/funds were actually paid to or collected by Defendants after the parties' relationship ended/terminated.

c. What revenue Defendants have received from projects, ventures, sources, events and/or streams that Plaintiff obtained, secured, negotiated, participated in, were involved in, supported, provided counsel on, advised on, assisted in and/or guided in some way, *and for which Defendants have failed to pay Plaintiff their Commission Payments* – a determination which will almost undoubtedly require a pre-judgment accounting; and

d. Whether the Entity Defendants are in fact alter egos of Defendant, Muni Long, and thus should be treated as one in the same for purposes of interpreting and enforcing the Agreement, including but not limited to

Formatted: Font: 9

Formatted: DocID, Line spacing: single

Formatted: Header

interpreting and enforcing Defendants' responsibility for payment of commissions, reimbursements, and/or other monies to Plaintiff.

~~73.~~80. A judicial declaration is necessary and appropriate at this time and under these circumstances, particularly given that Defendants are repudiating and/or failing to recognize the promises made under the verbal Agreement or the parties' clear course of conduct that followed the making of the Agreement and which, at the very least, constitutes an implied contract.

Formatted: Indent: First line: 0.5"

~~74.~~81. Defendants' repudiation and refusal to make Commission Payments and Expense Reimbursements to Plaintiff have caused (and continue to cause) financial harm to Plaintiff and an uncertainty regarding the parties' rights – harm and uncertainty that can and should be remedied through judicial declaration.

**WHEREFORE**, Plaintiff ~~seek~~seeks the following judicial declarations:

a. That, in or around July 2023, the parties came to an express verbal agreement (or alternatively, an implied in fact agreement) regarding Defendants reimbursing and compensating Plaintiff for Plaintiff providing management services to Defendants – specifically, that in exchange for management services from the Plaintiff, the Defendants agreed to reimburse Plaintiff for management-related expenses (Expense Reimbursements) and pay Plaintiff 20% of all gross revenue Defendants collected from any projects, ventures, sources, events and/or streams that Plaintiff obtained, secured, negotiated, participated in, were involved in, supported, provided counsel on, advised on, assisted in and/or guided in any way, irrespective of whether the corresponding deal/transaction was signed or whether the

Formatted: Font: 9

Formatted: DocID, Line spacing: single

revenue was actually paid to or collected by Defendants before the parties' relationship had terminated (Commission Payments);

b. That, Plaintiff is entitled to all Commission Payments, Expense Reimbursements and all associated interest – the breadth of which shall be more fully determined through a formal accounting, conducted by a special master, prejudgment operating receiver, forensic accountant and/or someone of equal competency/capability;

c. That, the Entity Defendants are in fact alter egos of Defendant, Muni Long, and thus should be treated as one in the same for purposes of interpreting and enforcing the Agreement (or any other related agreements, obligations, responsibilities, and/or liabilities between the parties for management services), including but not limited to Defendants' responsibility for payment of commissions, reimbursements, and/or other monies to Plaintiff; and

d. All such other and further declarations as this Court deems just and proper.

**COUNT V – EQUITABLE ACCOUNTING**

~~75.~~82. Plaintiff repeats, realleges, and incorporates all of the previous allegations contained in the foregoing paragraphs as if fully set forth herein.

~~76.~~83. Plaintiff and Defendants were in a confidential and trust-based relationship concerning the subject matter of this controversy, in that Defendants received and controlled funds from engagements obtained with Plaintiff's assistance and counsel, and from said funds were required to pay Plaintiff twenty percent (20%) of said funds, plus reimbursement of Plaintiff's expenses.

~~77.~~84. Defendants have breached their duty to pay what is owed to Plaintiff.



Formatted: Header

Formatted: Indent: First line: 0.5"

Formatted: Font: 9

Formatted: DocID, Line spacing: single

Formatted: Header

~~78.~~85. To the extent Defendants deny they entered into the Agreement with Plaintiff as alleged above, Plaintiff is without an adequate remedy at law to obtain relief in the form of payment for their valuable services.

Formatted: Indent: First line: 0.5"

~~79.~~86. Plaintiff has made a demand for an accounting but Defendants have refused.

~~80.~~ **WHEREFORE,** Plaintiff demands judgment against the Defendants, including a prejudgment appointment of a special master to take control of the accounts and issue a report on revenue received by Defendants from all Engagements, in the form of an order directing the Defendants to provide a complete set of Defendants' financial books and records for the period July 2, 2023 to the present for Plaintiff to perform an accounting, and remit funds owed to Plaintiff as alleged herein, as well as an award of costs and such other and further relief as this Court deems just and proper.

Formatted: Normal, Justified, Indent: Left: 0.25", First line: 0.5", Right: 0.25", No bullets or numbering

**COUNT VI – DEFAMATION *PER SE***

87. Plaintiff repeats, realleges, and incorporates all of the previous allegations contained in the foregoing paragraphs as if fully set forth herein.

88. On October 24, 2025, Defendant Long's representatives were quoted by Billboard, stating that Plaintiff's principals "took possession of the artist's phone and sought to have her involuntarily committed to a mental health facility, despite medical confirmation that she was suffering from a Lupus flare-up." *See* Ex. A. That statement is a blatant lie designed to disparage Plaintiff's reputation in the music industry. Other media outlets repeated Defendant Long's false claims. *See* Exs. B-D.

89. In Defendants' January 6, 2026 Answer (which is publicly available), Defendants repeated the false allegations that Plaintiff's principals were "instrumental" in causing her to be committed to a mental health facility, where she was prescribed Lithium by professionals at Cleveland Medical Center, instead of being treated for lupus, thereby causing her lupus to worsen.

Formatted: Font: 9
Formatted: DocID, Line spacing: single

Formatted: Header

*See* ECF No. 22 at ¶¶ 98, 99. Those allegations were made specifically against Plaintiffs in their professional capacity as Defendant Long's managers. *See id*. at ¶ 99.

90. In the wake of those allegations, other media outlets repeated Defendant Long's outlandish claims that Plaintiffs conspired to have her committed to a mental health facility, including Billboard, Yahoo Entertainment, and iHeart. *See* Exs. E-G.

91. These false allegations exposed Plaintiff to public contempt, hatred, ridicule, aversion and disgrace and relate directly to Plaintiff's trade, business, or profession.

92. Plaintiff's principals are private figures.

93. Defendant Long knew or should have known that the false allegations were false.

94. As a result of Defendants' conduct alleged herein, Plaintiff has suffered and will continue to suffer economic and non-economic damages in an amount to be determined at trial. Further, Defendants' conduct was wanton and willful, justifying an award of punitive damages.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

Dated: ~~October 23, 2025~~July 23, 2026
New York, New York

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: */s/ Aaron Wolfson*
Aaron Wolfson, Esq.
awolfson@foxrothschild.com
101 Park Avenue
New York, NY 10178
Tel: (212) 878-7982
Fax: (212) 692-0940
*Attorneys for Plaintiff*

Formatted: Font: 9
Formatted: DocID, Line spacing: single